IN THE UNITED STATES DISTRICT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| REO INVESTMENTS, LLC, | ) | CASE NO. 1:18-cv-01326 |
| | ) | |
| Plaintiff, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | MEMORANDUM IN SUPPORT OF |
| | ) | DEFENDANT CITY OF |
| CITY OF EUCLID, | ) | EUCLID'S MOTION TO DISMISS |
| | ) | PURSUANT TO RULES 12(B)(1) AND |
| Defendant. | ) | 12(b)(6) |

## I.      INTRODUCTION

Plaintiff REO Investments, LLC ("Plaintiff" or "REO") brings this class action complaint for declaratory and equitable relief, damages, and other relief against the Defendant City of Euclid ("Defendant" or "Euclid" or City) under the flawed legal theory that Euclid "[b]y threat of criminal prosecution…[is] compelling property owners like Plaintiff and putative class members to submit to warrantless inspections and to pay concomitant fees.[1]" Compl., ¶20.

Plaintiff's theory is directly contradicted by the plain language of Euclid's Codified Ordinances ("ECO"), which: (1) prohibits Euclid from entering upon or inspecting any private property when a property owner refuses to consent to such entry or inspection; and (2) exempts property owners who do not consent to Euclid conducting a search of their property from all penalties under the Building and Housing Code until a search warrant is obtained from a judge of a court of competent jurisdiction. ECO §§1703.36(c) and 1753.02(b).

---

[1]The Complaint does not allege any situations where Euclid has actually threatened criminal prosecution in order to compel a private property owner to consent to a warrantless search. This is because, as discussed throughout this memorandum, such a threat would be unlawful under Euclid's Codified Ordinances.

The Complaint conveniently ignores these clear pronouncements of the ECO and instead asks this Court for relief based upon the flawed conclusion that the ECO's rules and regulations for pre-sale inspections, pre-rental inspections, and pre-renewal rental inspections[2] are "…the exact scheme that the United States Supreme Court and Ohio courts have consistently found to violate the law. *Camara v. Mun. Ct. of City and County of San Francisco*, 387 U.S. 523 (1967); *Wilson v. City of Cincinnati*, 346 N.E.2d 666 (Ohio 1976); *Baker v. City of Portsmouth*, 2015 WL 5822659 (S.D. Ohio 2015); and *Thomson v. City of Oakwood, Ohio*, 2018 WL 776375 (S.D. Ohio 2018)." Compl., ¶21. This is simply not true. The municipal ordinances in *Camara*, *Wilson*, *Portsmouth*, and *Oakwood* are clearly distinguishable from the ECO because, unlike those cases, the ECO: (1) does not criminalize a property owner's refusal to consent to a governmental search of private property; (2) does not authorize Euclid to conduct non-consensual warrantless searches; and (3) exempts private property owners from all penalties under the ECO unless and until a valid search warrant from a judge of a court of competent jurisdiction is obtained.

The warrant requirements and penalty exemptions in ECO §§ 1703.36(c) and 1753.02(b) render the ECO's pre-sale inspection, pre-rental inspection, and pre-renewal rental inspection requirements unquestionably constitutional and distinguish the ECO from cases finding municipal codes which lack these constitutional safeguards unconstitutional. Plaintiff's Complaint does not plead a substantive claim upon which this Court can grant relief. Accordingly, this Court must dismiss Plaintiff's Complaint.

There are also procedural reasons why this case must be dismissed. First, the Complaint does not demonstrate that Plaintiff has standing to challenge the constitutionality of the ECO's pre-sale inspection, pre-rental inspection, and pre-renewal inspection requirements. Second, the

---

[2] These terms are defined *infra* at p. 3 and 4.

Complaint fails to demonstrate that the case is ripe for judicial review. Third, assuming *arguendo* that the Complaint pleads a cognizable claim under 42 U.S.C. § 1983, which it does not, Plaintiff's alleged constitutional injury occurred nearly four years ago, on August 14, 2014. Compl., ¶ 8. Plaintiff filed this claim well-after the two year statute of limitations for constitutional claims brought pursuant to §1983. Thus, the statute of limitations bars this Court from considering Plaintiff's constitutional challenge to the ECO's pre-sale inspection, pre-rental inspection, and pre-renewal rental inspection requirements.

## II.     FACTUAL BACKGROUND

### A.     Euclid's Building and Property Maintenance Code.

Euclid's Building and Property Maintenance Code aims to:

> …establish minimum standards necessary to make all dwelling structures safe, sanitary, free from fire and health hazards, fit for human habitation and beneficial to the public welfare; to establish minimum standards governing the maintenance of dwelling structures in such condition as will not constitute a blighting or deteriorating influence on the neighborhood and the community; to protect property values and to maintain the character and appearance of the community and neighborhoods within the community; to fix responsibilities for owners and occupants of dwelling structures with respect to sanitation, repair and maintenance; to establish additional standards for multiple dwellings; to authorize the inspection of dwelling structures; to establish enforcement procedures; to authorize the vacation or condemnation of dwelling structures unsafe or unfit for human habitation; and to fix penalties for violations.

ECO §1751.02.

In furtherance of the stated goals of the Building and Property Maintenance Code, Euclid has enacted rules and regulations designed to ensure that dwelling structures are safe and habitable upon transfer of ownership and prior to rental to third parties. *See generally* ECO Chapters 1701, 1703, 1751, 1753, 1759, and 1761. Generally, the Complaint references some of the ECO rules establishing the procedure for securing Certificates of Inspection prior to the sale of a dwelling structure (ECO Chapter 1759) ("pre-sale inspections"); some of the ECO rules

regulating the procedure for securing Certificates of Occupancy prior to the rental or leasing of a single- or two-family dwelling structure (ECO Chapter 1761) ("pre-rental inspections"); and some of the ECO rules regulating the procedure requiring pre-rental inspections prior to an owner obtaining a Rental License (ECO Chapter 1761.01) ("pre-renewal rental inspections").

Of particular significance, and conspicuously absent from the Complaint, is any reference to the rules and regulations in the ECO which clearly delineate the respective rights and obligations of private property owners and Euclid when a private property owner refuses to consent to a pre-sale inspection, a pre-rental inspection or a pre-renewal rental inspection. In those instances, the ECO is unambiguous:

> Except in emergency situations, if the owner, agent or administrator acting for the owner of a structure or premises used for dwelling purposes refuses entrance to the Building Commissioner or his or her authorized agent and/or inspector for purposes of inspection, <u>no such entrance or inspection shall be made unless a search warrant is properly obtained from a judge of a court of competent jurisdiction. No penalty under the penalty provisions of this Building and Housing Code shall apply against such owner who refuses entrance until such search warrant is obtained</u>.

ECO § 1753.02(b)(emphasis added); ECO §1703.36(c).

By their own terms, ECO §§ 1703.36(c) and 1753.02(b) prohibit any entrance upon or inspection of private property until a search warrant is secured from a judge of a court of competent jurisdiction. More importantly, under ECO §§ 1703.36(c) and 1753.02(b), any property owner who refuses to allow Euclid to enter on their private property is specifically exempt from the penalty provisions of the ECO's Building and Housing Code unless and until a search warrant is obtained from a court of competent jurisdiction.

**B.      Euclid's alleged August 14, 2014 entry onto property owned by Plaintiff.**

According to the Complaint, four years ago, on August 14, 2014, Euclid allegedly entered onto the property owned by Plaintiff at 1870 Ball Avenue, Euclid, Ohio (the "Subject

Property"). Compl., ¶8. The Complaint does not allege that Euclid's August 14, 2014 entry onto the Subject Property was to conduct a pre-sale inspection, pre-rental inspection, or pre-renewal rental inspection. The Complaint does not allege that Euclid threatened Plaintiff with criminal prosecution or any other penalties as a means of securing entry on to the Subject Property. The Complaint does not allege that Euclid prosecuted Plaintiff for any violations that may or may not have been identified during Euclid's alleged entry onto the Subject Property on August 14, 2014.

     **C.**     **The Lawsuit.**

On June 11, 2018, nearly four years after Euclid's alleged August 14, 2014 entry onto the Subject Property, Plaintiff filed the instant class action complaint for declaratory, equitable, and other relief. Generally, the Complaint seeks:

    1.    A declaratory judgment, pursuant to 28 U.S.C. § 2201, that Euclid's regulatory scheme of pre-sale, pre-rental, and pre-renewal rental inspection requirements, as well as Euclid's enforcement policies, practices and actions relating to the requirements are "unconstitutional, facially and as applied here;" and

    2.    Redress, pursuant to 42 U.S.C. § 1983 for alleged violations of due process and freedom from unconstitutional searches pursuant to the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution based upon the theory that "by threatening Plaintiff and putative class members with criminal prosecution unless they gave up their Fourth Amendment right to be free from unreasonable governmental searches, Defendant has violated Plaintiff and the putative class members Fifth Amendment Due Process rights"; and

    3.    Recovery of a monetary refund under a state-law claim for unjust enrichment, disgorgement, and restitution based upon the ECO's allegedly unconstitutional scheme.

Compl. The Complaint does not allege that Euclid threated Plaintiff or any putative class members with criminal prosecution as a means to compel a *warrantless* pre-sale inspection, pre-rental inspection, or pre-renewal rental inspection of the Subject Property or any other private property.

{02641950 - 1}                                          5

Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure require this Court to dismiss the Complaint because this Court lacks subject matter jurisdiction over the case and because the Complaint fails to state a claim upon which relief can be granted.

## III.    STANDARDS OF REVIEW

### A.    Rule 12(b)(1) Standard.

Federal courts are not courts of general jurisdiction. They have only the power authorized by Article III of the Constitution and conferred by acts of Congress. *Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 534 (1986). Jurisdiction is a prerequisite to a court ruling on the merits of a case. "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex parte McCardle,* 74 U.S. 506, 514 (1869).

Motions to dismiss for lack of subject matter jurisdiction are governed by Rule 12(b)(1) of the Federal Rules of Civil Procedure. Such challenges come in two forms: facial challenges and factual challenges. In a facial challenge, a defendant contends that, even accepting the material allegations of the complaint as true and construing them in a light most favorable to the nonmoving party, the court still lacks subject matter jurisdiction over the claim. *Singleton v. United States,* 277 F.3d 864, 870 n. 4 (6th Cir.2002) (citing *Ohio Nat'l Life Ins. Co. v. United States,* 922 F.2d 320, 325 (6th Cir.1990)).

In contrast, a factual attack is "not a challenge to the sufficiency of the pleading's allegation, but a challenge to the factual existence of subject matter jurisdiction." *United States v. Ritchie,* 15 F.3d 592, 598 (6th Cir.1994). If the moving party makes a factual attack, when determining whether subject matter jurisdiction exists the court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Cameron v. Children's Hosp.*

*Med. Ctr.,* 131 F.3d 1167, 1170 (6th Cir.1997) (quoting *Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir.1981)). "[N]o presumptive truthfulness attaches to [the] plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* In either case, the burden is on the party asserting jurisdiction to demonstrate that subject matter jurisdiction exists. *See Moir v. Greater Cleveland Reg'l Transit Auth.,* 895 F.2d 266, 269 (6th Cir.1990).

**B.      Rule 12(b)(6) Standard**

In evaluating a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff, accept its factual allegations as true, and draw reasonable inferences in favor of the plaintiff. *Directv, Inc. v. Treesh*, 487 F.3d 471 (6th Cir. 2007). The Complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Id.*   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 678 (2009).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege facts that "state a claim to relief that is plausible on its face," and that, if accepted as true, are sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Where a complaint pleads facts that are merely consistent with a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

On a motion brought under Rule 12(b)(6) the court's inquiry is limited to the content of the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008); *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001).

## IV.   LAW AND ARGUMENT.

### A.   The Complaint fails to state a claim upon which relief can be granted.

#### 1.   Euclid's ECO rules and regulations for pre-sale inspections, pre-rental inspections, and pre-renewal rental inspections of private property are constitutional.

Plaintiff alleges that Euclid's rules and regulations in its Codified Ordinances for pre-sale inspections, pre-rental inspections, and pre-renewal rental inspections of private property violate Plaintiff's due process rights and its right to be free from unconstitutional searches pursuant to the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.[3]

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV.

---

[3] Other than generally invoking the Fifth Amendment to the United States Constitution's prohibition against depriving a person of life, liberty or property without due process of law, the Complaint does not state how Euclid's rules and regulations for pre-sale inspections, pre-rental inspections, and pre-renewal rental inspections violate Plaintiff's due process rights under the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution. *See e.g.* Compl., ¶46. The Complaint does not plead a claim for any violation of Plaintiff's due process rights.

The Fourth Amendment protections apply to "administrative searches" conducted as part of an effort "aimed at securing city-wide compliance with minimum physical standards for private property" or where "[t]he primary governmental interest at stake is to prevent even the unintentional development of conditions which are hazardous to public health and safety" regardless of whether there is a misdemeanor penalty. *Camara*, 387 U.S. at 535. *Camara* holds that administrative searches "when authorized and conducted *without* a warrant procedure lack the traditional safeguards which the Fourth Amendment guarantees…" *Id.* at  534 (emphasis added).

Searches conducted pursuant to ECO's pre-sale inspection, pre-rental inspection, and pre-renewal rental inspections are administrative searches. The ECO's rules and regulations for pre-sale inspections, pre-rental inspections, and pre-renewal rental inspections comply with the requirements of the Fourth, Fifth, and Fourteenth Amendments. ECO §§1703.36(c) and 1753.02(b) prohibit non-consensual entries upon private property unless a search warrant is first obtained from a judge of a court of competent jurisdiction. Thus, Euclid's rules and regulations for pre-sale inspections, pre-rental inspections, and pre-renewal rental inspections comply with *Camara*'s requirement that administrative search regimes have a warrant procedure in order to be constitutional. Moreover, Euclid's rules and regulations for pre-sale inspections, pre-rental inspections, and pre-renewal inspections exempt property owners who refuse to consent to such inspections from any penalties in the Building and Housing Code. Consequently, property owners are not penalized for refusing to give Euclid access to their private property, and Euclid cannot, by threat of criminal prosecution, compel property owners to consent to a *warrantless* search.

Euclid's rules and regulations for pre-sale inspections, pre-rental inspections, and pre-renewal rental inspections contain a valid search warrant procedure. This is precisely what the constitution requires under *Camara*. Therefore, Euclid's rules and regulations for pre-sale inspections, pre-rental inspections, and pre-renewal rental inspections are constitutional as a matter of law.

      **2.**      **By Euclid's laws, Euclid cannot threaten criminal prosecution as a means to compel property owners to submit to warrantless searches of private property because private property owners who refuse to consent to warrantless searches are exempt from the penalty provisions of the Building and Housing Code unless and until Euclid obtains a valid search warrant from a court of competent jurisdiction.**

The Complaint alleges, without any supporting factual allegations, that Euclid's rules and regulations for pre-sale inspections, pre-rental inspections, and pre-renewal rental inspections violate the Plaintiff's and the putative class members' Fourth, Fifth and Fourteenth Amendment rights because "[b]y threat of criminal prosecution…[Euclid] compels property owners like Plaintiff and the putative class members to submit to warrantless inspections and to pay concomitant fees."[4] Compl. ¶21. This allegation is unsupported by any facts in the Complaint and is directly contradicted by the plain language of the ECO.

A review of the ECO's rules and regulations for pre-sale inspections, pre-rental inspections, and pre-renewal rental inspections shows that non-consensual warrantless inspections of private property are prohibited. ECO §§ 1703.36(c) and 1753.02(b). If a private property owner refuses to allow Euclid to enter onto private property, ECO §§ 1703.36(c) and 1753.02(b) requires Euclid to obtain a search warrant from a judge of a court of competent

---

[4]Plaintiff cannot identify any instances where Euclid has ever threatened criminal prosecution as a means to compel Plaintiff or any other property owner to submit to a warrantless pre-sale, pre-rental, or pre-renewal search of the Subject Property or any other private property because such a threat would directly contradict ECO §§ 1703.36(c) and 1753.02(b).

jurisdiction. *Id.* Moreover, the threat of criminal prosecution as a means of securing consent for a warrantless search – which the Complaint does not allege actually occurs – is prohibited by ECO §§1703.36(c) and 1753.02(b). The ECO exempts private property owners from any and all criminal prosecution unless and until Euclid obtains a search warrant from a judge of a court of competent jurisdiction.

Because ECO §§ 1703.36(c) and 1753.02(b) exempts property owners who refuse to consent to administrative searches from any penalties under the Building and Housing Code, Euclid cannot prosecute someone without securing a search warrant first, and consequently, Euclid cannot compel consent to warrantless searches by threatening criminal prosecution. Thus, Plaintiff's theory that the ECO's rules and regulations for pre-sale inspections, pre-rental inspections, and pre-renewal rental inspections are unconstitutional because they compel property owners to consent to administrative searches under threat of criminal prosecution fails as a matter of law.

> **3.** **Euclid's rules and regulations for pre-sale inspections, pre-rental inspections, and pre-renewal rental inspections of private property are different from the municipal regulations in *Camara*, *Wilson*, *Portsmouth*, and *Oakwood*, and, therefore, the cases relied upon in Plaintiff's Complaint do not demonstrate that the ECO is unconstitutional.**

Plaintiff claims that Euclid's pre-sale inspection, pre-rental inspection, and pre-renewal rental inspection regulations are "the exact scheme[s] that the United States Supreme Court and Ohio Courts have consistently found to violate the law. *Camara v. Mun. Ct. of City and County of San Francisco*, 387 U.S. 523 (1967); *Wilson v. City of Cincinnati*, 346 N.E.2d 666 (Ohio 1976); *Baker v. City of Portsmouth*, 2015 WL 5822659 (S.D. Ohio 2015); and *Thomson v. City of Oakwood, Ohio*, 2018 WL 776375 (S.D. Ohio 2018)." Compl., ¶21. This is wrong. Collectively and individually, *Camara*, *Wilson*, *Portsmouth*, and *Oakwood* do not stand for the

proposition that the ECO's rules and regulations for pre-sale inspections, pre-rental inspections, and pre-renewal rental inspections violate the Fourth, Fifth, or Fourteenth Amendments to the United States Constitution.

*Camara* does not support a finding that the ECO's rules and regulations for pre-sale inspections, pre-rental inspections, and pre-renewal rental inspections are unconstitutional. *Camara* involved a challenge to a municipal code provision that criminalized the <u>private property owner's refusal to consent to a warrantless inspection of his residence</u>. *Camara,* 387 U.S. at 525 (emphasis added). The ECO does not criminalize a private property owner's refusal to consent to a search of their private property. In fact, ECO §§ 1703.36(c) and 1753.02(b) respects an individual property owner's right to refuse to consent to a warrantless search by prohibiting any non-consensual inspection until a search warrant is secured from a judge of a court of competent jurisdiction. Moreover, it makes clear that the penalty provisions of the Building and Housing Code do not apply against property owners until Euclid can obtain a valid search warrant. ECO §§ 1703.36(c) and 1753.02(b). Thus, *Camara*'s holding that a municipal ordinance that criminalizes a property owner's refusal to consent to an administrative search of private property is unconstitutional has no bearing on whether Euclid's rules and regulations for pre-sale inspection, pre-rental inspection, and pre-renewal rental inspections are constitutional.

*Camara* simply does not support a finding that Euclid's rules and regulations for pre-sale inspections, pre-rental inspections, and pre-renewal rental inspections are unconstitutional. In fact, *Camara* actually supports the constitutionality of the ECO because *Camara* only prohibits administrative searches "...when authorized and conducted without a warrant procedure..." *Camara* at 534. Euclid has a warrant procedure. *See* ECO §§1703.36(c) and 1753.02(b). Thus, *Camara* supports the legal conclusion that the inspection requirements at issue are constitutional.

Plaintiff is also wrong in its assertion that *Wilson* involved "the exact scheme" as Euclid. *Wilson* involved a municipal ordinance that:

> requires the owner of real property to tender a certificate of housing inspection to a prospective buyer, and such certificate may be obtained only by allowing a warrantless inspection of the property, the imposition of a criminal penalty upon the owner's failure to tender the certificate violates the owner's rights under the Fourth Amendment to the United States Constitution.

*Wilson*, 346 N.E.2d at paragraph one of the syllabus. *Wilson* is not binding on this Court. Nevertheless, the case at bar is case is distinguishable from *Wilson* because the ECO does not condition the receipt of a certificate of housing inspection upon the seller allowing a warrantless inspection of his or her property. To the contrary, under ECO §§ 1703.36(c) and 1753.02(b), if a private property owner refuses to allow Euclid to enter onto private property for a pre-sale inspection, pre-rental inspection, or pre-renewal rental inspection, the ECO requires the Building Commissioner to secure a search warrant from a judge of a court of competent jurisdiction and exempts the property owner from all penalties under the Building and Housing Code until the search warrant is obtained. If Euclid fails to secure a search warrant, the private property owner is exempt from any and all penalties under the ECO Building and Housing Code that may arise from a failure to secure the otherwise-required pre-sale inspection, pre-rental inspection, or pre-renewal inspection certificate(s) or license(s).

*Portsmouth* also does not support Plaintiff's assertion that the ECO's rules and regulations for the subject inspections are unconstitutional. First, *Portsmouth*, 2015 WL 5822659, is a non-binding decision from the Southern District of Ohio. Second, the regulatory scheme challenged in *Portsmouth* "…authorize[d] warrantless administrative inspections" which "afford[d] no warrant procedure or other mechanism for precompliance review" and required the property owners to face "the choice of consenting to the warrantless inspection or facing criminal

charges." *Id.* at *5. Euclid contains a warrant procedure. ECO §§1703.36(c) and 1753.02(b). Unlike *Portsmouth*, Euclid has not authorized warrantless inspections of private property. Further, Euclid does not present property owners with the choice of consenting to an administrative search or facing criminal charges. Instead, the private property owners are exempted from all penalties under the Building and Housing Code unless and until a search warrant is secured.

Finally, *Thompson*, 2018 WL 776375, which remains pending in the Southern District of Ohio, does not demonstrate that the ECO's rules and regulations for pre-sale inspections, pre-rental inspections, and pre-renewal rental inspections are unconstitutional. *Thompson* involved a municipal ordinance that criminalized the transfer of property without first securing the required certificate of occupancy. *Id.* at *2. Although the ECO Building and Housing Code has similar language making transfer of property "unlawful," the ECO's requirement simply does not apply to property owners who refuse to consent to a search unless and until Euclid obtains a valid search warrant. ECO §§ 1703.36(c) and 1753.02(b). The ordinance in *Thompson* did not contain this provision. This provision distinguishes the ECO from *Thompson*.

Because none of the cases Plaintiff relies upon support the proposition that the ECO – which contains a valid warrant procedure and exempts persons who refuse to consent to warrantless searches from any penalties unless and until a valid search warrant is obtained – is unconstitutional, Plaintiff's complaint fails to state a claim upon which relief can be granted. Pursuant to Rule 12(b)(6), the Complaint must be dismissed.

### B.    The Complaint does not demonstrate that Plaintiff has standing to bring a claim.

The Complaint does not allege that Euclid has ever compelled Plaintiff to consent to a warrantless search of the Subject Property by threatening criminal prosecution. Nor does the Complaint state that such compelled consent to a warrantless search is likely to arise in the near future. Thus, assuming *arguendo* that Plaintiff can make a showing that the ECO's rules and regulations for pre-sale inspections, pre-rental inspections, and pre-renewal rental inspections are unconstitutional, Plaintiff has not made any factual allegations showing that it has or will sustain a concrete and particularized, actual or imminent injury.

Article III of the United States Constitution prescribes that federal courts may exercise jurisdiction only where an actual "case or controversy" exists. *See* U.S. Const. art. III, § 2. Courts have explained the "case or controversy" requirement through a series of "justiciability doctrines," including, "perhaps the most important," that a litigant must have "standing" to invoke the jurisdiction of the federal courts. *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997). The Supreme Court has enumerated the following elements necessary to establishing standing:

> First, Plaintiff must have suffered an injury in fact—an invasion of a legally-protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal citations and quotations omitted). It is Plaintiff's burden to establish each has standing. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006).

The Complaint does not demonstrate that Plaintiff has or will suffer an injury in fact. The Complaint does not demonstrate that there is a causal connection between any injury sustained by Plaintiff and Euclid's alleged conduct. Indeed, the Complaint does not actually claim that Euclid is engaging in any conduct at all, it merely makes the unsubstantiated allegation that, somehow, in contravention of ECO §§ 1703.36(c) and 1753.02(b), Euclid is using threats of criminal prosecution to compel property owners to consent to *warrantless* searches of their property. Finally, the Complaint does not demonstrate that a favorable decision will redress any alleged injury Plaintiff or members of the putative class have sustained. The Complaint fails to demonstrate that Plaintiff has standing to bring a claim.

### C.     The Complaint is not ripe for review.

Ripeness requires that the injury in fact be certainly impending. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000). The requirement of ripeness prevents courts from hearing premature or abstract disagreements. *Platt v. Bd. of Commrs. on Grievances & Discipline of Ohio Supreme Court*, 769 F.3d 447, 451 (6th Cir.2014). A case is not ripe if hearing it would be premature or abstract. *Id.* A claim is no longer abstract when, "its factual components fleshed out, by some concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm him. *Natl. Park Hospitality Ass'n v. Dept. of Interior*, 538 U.S. 803, 808, 123 S.Ct. 2026, 2030, 155 L.Ed.2d 1017 (2003).

The Complaint does not demonstrate that any injury in fact is certainly impending. Plaintiff is free to refuse Euclid's entry on its property. If it does so, Plaintiff is exempt from any penalty provisions of the ECO Building and Housing Code unless and until Euclid obtains a valid search warrant. ECO §§ 1703.36(c) and 1753.02(b). Plaintiff's allegation that its Fourth, Fifth, and Fourteenth Amendment rights are somehow under attack – despite any factual

allegations to demonstrate that such an attack is certainly impending and imminent, and the fact that ECO §1703.36(c) and 1753.02(b) prohibit such an attack – are premature, abstract, and not ripe for judicial review. This Court should dismiss the Complaint because it does not state a claim that is ripe for judicial review.

**D.**     **Assuming *arguendo* that Plaintiff's Complaint articulates an actual constitutional injury, and demonstrates that Plaintiff may bring a claim in this Court,  Plaintiff's claim is barred by the Statute of Limitations.**

The only instance where Plaintiff alleges that Euclid entered on the Subject Property was on or about August 12, 2014. Plaintiff filed this lawsuit on June 11, 2018, nearly four years later. In Ohio, there is a two-year statute of limitations for filing a claim under 42 U.S.C. § 1983. *Browning v. Pendleton*, 869 F.2d 989 (6th Cir. 1989). Accordingly, assuming *arguendo* that Plaintiff sustained some constitutional injury, the statute of limitations for bringing a claim pursuant to 42 U.S.C. §1983 has passed and Plaintiff is time-barred from brining a claim in this Court. Accordingly, pursuant to Rules 12(b)(1) and 12(b)(6), this Court must dismiss the Complaint.

**E.**     **The Complaint does not demonstrate that Declaratory Judgment is Appropriate.**

Plaintiff also seeks relief under the Declaratory Judgment Act, 28 U.S.C. § 2201. The Declaratory Judgment Act expressly incorporates the constitutional requirement of standing: "in a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested parties seeking such a declaration, whether or not further relief is or could be sought." *Id.* § 2201(a). Thus, "[w]hen seeking a ruling under the Declaratory Judgment Act, [a party] must also demonstrate standing pursuant to the statute." *Motsinger v. Nationwide Mut. Ins. Co.*, 920 F. Supp. 2d 637, 642–643 (D.S.C. 2013) (addressing constitutional and Declaratory

Judgment Act standing). "[T]he phrase 'case of actual controversy' in the [Declaratory Judgment] Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." *Medlmmune Inc. v. Genetech, Inc.*, 549 U.S. 118, 126 (2007) (internal citations omitted). Thus, "[t]o establish standing under the Declaratory Judgment Act, there must be an 'actual controversy' in a constitutional sense." *Ampro Indus., Inc. v. Dr. Farrah Gray Pub., LLC*, 2013 WL 5426257, * 2 (W.D. Tenn.) (relying on *Magaw*, 132 F.3d at 279).

The Declaratory Judgment Act only provides courts with discretion to fashion a remedy in cases where federal jurisdiction already exists, and therefore, the Court must have an independent basis for subject matter jurisdiction." *Mesa Underwriters Specialty Ins. Co. v. Myers*, 2016 WL 436079 (N.D. Ohio 2016).

To determine whether a declaratory judgment action satisfies the case or controversy requirement, the question is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Medlmmune, Inc.*, 549 U.S. at 127 (relying on *Maryland Cas. Co. v. Pac. Coal & Oil, Co.*, 312 U.S. 270, 273 (1941) ). When bringing a claim under the Declaratory Judgment Act, whether a party has standing to sue, and there exists a controversy between the parties that is ripe often "boil[s] down to the same question." *MedImmune, Inc.*, 549 U.S. at 128 n.8.

The Complaint does not allege that there is a substantial controversy between Plaintiff and Euclid which is of sufficient certainty and immediacy, and indeed reality, to warrant the issuance of a declaratory judgment under 22 U.S.C. §2201. Accordingly, there is no need for the Court to issue the requested declaratory judgment.

**F.    The Complaint does not demonstrate that Plaintiff is entitled to preliminary and permanent injunctions pursuant to Rule 65 of the Federal Rules.**

Paragraph 38 of the Complaint requests a preliminary and permanent injunction prohibiting Euclid from enforcing its search policies and all policies, practices, and conduct reliant on and related to the pre-sale, pre-rental, and pre-inspection provisions of the ECO.

When deciding whether to issue a preliminary injunction under Fed. R. Civ. P. 65, the Court must consider whether: (1) the moving party demonstrates a strong likelihood of success on the merits of the case; (2) the moving party will suffer irreparable harm without the restraining order; (3) issuing the restraining order would cause substantial harm to others; and (4) the public interest is served by issuing a restraining order. *Overstreet v. Lexington–Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).  Because the Court must dismiss this case, Plaintiff cannot demonstrate a likelihood of success on the merits. Therefore, Plaintiff is not entitled to a preliminary or permanent injunction. *See Bonds v. Barker*, 2018 WL 3036204, at *4 (N.D. Ohio June 19, 2018).

**G.    Plaintiff's state-law claims for unjust enrichment, disgorgement, and restitution fail as a matter of law.**

Plaintiff's third cause of action is a state law claim in equity for unjust enrichment, disgorgement, and restitution. This third cause of action is premised entirely upon the flawed legal theory that the ECO is unconstitutional. As discussed throughout this memorandum, this is simply not supported by any law, and as such, Plaintiff's third cause of action must be dismissed.

Additionally, it must be noted that, under Ohio law, the doctrine of unjust enrichment does not apply to a political subdivision, such as Oakwood. See *Wright v. City of Dayton*, 158 Ohio App. 3d 152, 158-59 (Ohio App. 2004)(citing *G.R. Osterland Co. v. City of Cleveland*, 140 Ohio App. 3d 574 (Ohio App. 2000); *Cuyahoga Falls v. Ashcraft*, Ohio Ninth App. Dist. No.

15129, 1991 Ohio App. LEXIS 6376); *Magnum Towing & Recovery, LLC v. City of Toledo*, 430 F. Supp. 2d 689, 701 (N.D. Ohio 2006)("Under Ohio law, a municipality is not liable for unjust enrichment (quantum meruit) or quasi- and implied contracts"). Thus, Plaintiff's third cause of action fails as a matter of law and must be dismissed.

The doctrine of supplemental jurisdiction, as codified at 28 U.S.C. § 1367, "grants a district court broad discretion to decide whether to exercise jurisdiction over state-law claims that are 'so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.'" *Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010). In fact, § 1367(c)(3) specifically provides that supplemental jurisdiction is appropriately declined when the court has "dismissed all other claims over which it has original jurisdiction." *See* 28 U.S.C. § 1367(c)(3)

Consistent with this teaching, federal courts in Ohio have declined to exercise supplemental jurisdiction over state law claims that remain after dismissal of all federal claims. *Withers v. Shoulders*, 2015 WL 506960, at *4 (N.D. Ohio Feb. 6, 2015) ("Therefore, for the foregoing reasons, the Court grants Defendants' Motions to Dismiss and dismisses all federal claims against officers Shoulders and Shapiro and the City of Cleveland. The Court declines to exercise its supplemental jurisdiction over the remaining state law claims and dismisses the above-captioned case in its entirety."); *Wilk v. Vill. of Reminderville*, 2006 WL 355282, at *6 (N.D. Ohio Feb. 15, 2006) (dismissing § 1983 claims and declining "to exercise supplemental jurisdiction over Wilk's state law claims").

For the same reasons, having dismissed all of Plaintiff's causes of action that provide this Court with original jurisdiction, this Court should decline to exercise supplemental jurisdiction over Plaintiff's Third Cause of Action.

## V.       CONCLUSION

Because Euclid's pre-sale inspection, pre-rental inspection, and pre-renewal rental inspection rules and regulations require Euclid to secure a search warrant before any unauthorized entry upon private property, and because ECO exempts private property owners who refuse to consent to the search from being subject to any penalties unless and until Euclid secures a search warrant from a court of competent jurisdiction,  Plaintiff's Complaint fails to state a claim upon which relief can be granted.

Furthermore because Plaintiff's Complaint fails to demonstrate that Plaintiff has standing to bring any claim before this Court, fails to demonstrate that Plaintiff's claims are ripe for judicial review, and because any potential claim of Plaintiff's is time-barred, this Court lacks subject matter jurisdiction over the controversy. Accordingly, this Court must dismiss the Complaint.

<div style="margin-left:40%">

Respectfully submitted,

/s/ R. Todd Hunt
R. Todd Hunt (Reg. No. 0008951)
Email: rthunt@walterhav.com
Direct Dial: 216-928-2935

Sara J. Fagnilli (Reg. No. 0029753)
Email: sfagnilli@walterhav.com
Direct Dial: 216-928-2958

Benjamin Grant Chojnacki
(Reg. No. 0087401)
Email: bchojnacki@walterhav.com

WALTER | HAVERFIELD LLP
1301 East Ninth Street, Suite 3500
Cleveland, Ohio 44114-1821
Telephone:  (216) 781-1212

*Attorneys for Defendant*

</div>

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on July 30, 2018, a copy of the foregoing Memorandum in Support of Defendant's Motion to Dismiss was served upon all counsel of record via the court's efiling service.

<u>/s/ Benjamin Grant Chojnacki</u>
One of the Attorneys for Defendant